IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VICTOR VIRUET, *et al.*,<br><br>**Plaintiffs**<br><br>v.<br><br>MIGUEL A. VIRUET-MOJICA, *et al.*,<br><br>**Defendants** | CIVIL NO. 12-1502 (JAG) |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

Before the Court are three motions to dismiss, advanced by co-defendants Miguel Viruet-Mojica ("Viruet-Mojica"), Betiana De Jesus ("De Jesús"), Eliezer Vazquez ("Vazquez"), Wilbert Saez-Rivera ("Saez"), Nelson Salgado-Calderon ("Salgado"), and Jesús M. Ramos-Rodriguez ("Ramos"). (Docket Nos. 23, 37, and 41). For the reasons set forth, the Court **GRANTS IN PART and DENIES IN PART** the three motions.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Court draws the following facts from Plaintiffs' Complaint and takes them as true for purposes of resolving the motions to dismiss.

On July 1, 2011, Plaintiff Victor Viruet ("Plaintiff") was walking home when Viruet-Mojica and De Jesus pepper sprayed

Plaintiff for no reason. As Plaintiff attempted to run to his grandmother's house, a neighbor, Miguel A. Morales Sanchez ("Morales-Sanchez"), attacked Plaintiff with a machete and a confrontation ensued between Plaintiff, his grandmother, a passerby, and Moralez-Sanchez.

Moralez-Sanchez's daughter called the police, telling them Plaintiff had killed her father. The police subdued Plaintiff, but stopped restraining him after realizing Moralez-Sanchez was unharmed. Plaintiff started walking towards his grandmother's house when Viruet-Mojica pulled his gun out. Meanwhile, (1) Vazquez nonchalantly told Viruet-Mojica to shoot Plaintiff; (2) another officer screamed "don't do it"[1]; (3) Saez was standing nearby talking on the phone; and (4) De Jesus was standing and watching. Viruet-Mojica then shot Plaintiff twice in the stomach with four or five seconds between shots.

Plaintiff's brother, ("CVG"), came running to help Plaintiff but Salgado told him not to touch Plaintiff. None of the officers attempted to help. As a result of the injuries, Plaintiff suffered severe physical, emotional and mental damages. Plaintiffs Carmen Ocasio (Plaintiff's grandmother), CVG (Plaintiff's brother), and Carlos Viruet (Plaintiff's father) also suffered severe emotional and mental damages from seeing Plaintiff's suffering.

---

[1] The complaint states that the officer that yelled "don't do it" abandoned the scene, and was, thus, never identified. (Docket No. 1, p. 9).

Ramos was at all relevant times the Toa Alta Police Department Commissioner and was responsible for the training and discipline of the Toa Alta police officers involved in the incident. He had previously received complaints about the conduct of the officers involved in this incident. The Toa Alta Police Department had also received a number of complaints concerning the use of excessive force by police, which were not properly investigated and addressed.

**STANDARD OF REVIEW**

Under Fed. R. Civ. P. 12(b)(6), a Defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. To overcome a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit distilled from Twombly and Iqbal a two-pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action." Ocasio-Hernández, 640 F.3d at 12 (internal

punctuation omitted). In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or "actual proof of those facts is improbable." Id. Finally, the Court assesses whether the facts taken as a whole "state a plausible, not a merely conceivable, case for relief." Id.

In conducting this test, a court must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. See Ocasio-Hernández, 640 F.3d at 12. Thus, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the Plaintiff is asking the Court to draw from the facts alleged in the complaint." Id. at 13.

## DISCUSSION

Motion to dismiss as to Defendants Viruet-Mojica, De Jesus and Vazquez

I. Plaintiff's Claims under 42 U.S.C. § 1983

The constitutional standard that governs a claim alleging excessive force is the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). Therefore, Plaintiff's § 1983 claim will be analyzed under the Fourth Amendment, and any Fourteenth Amendment claim is dismissed.

The Fourth Amendment requires the force used during a seizure to be "reasonable" at all times. Graham v. Connor, 490 U.S. 386, 396 (1989). Courts must look at the totality of the circumstances in evaluating the reasonableness of an officer's use of force. Id. In particular, courts should evaluate 1) the severity of the crime at issue, 2) whether the suspect poses an immediate threat to the safety of officers or others, and 3) whether the suspect is actively resisting arrest or attempting to evade arrest. Id. For the use of deadly force to be reasonable against a suspect fleeing by foot, an officer must have probable cause that the suspect poses a threat of physical harm. See Tennessee v. Garner, 471 U.S. 1, 11–12 (1985). Finally, the reasonableness of an officer's use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight". Graham, 490 U.S. 386, 396 (1989).

Viruet-Mojica, De Jesus and Vazquez argue that Plaintiff has failed to make the necessary factual allegations against them to support a § 1983 claim for excessive force. (Docket No. 41, p. 4). The Court disagrees. There are two main instances where excessive force is alleged: 1) when Plaintiff was pepper sprayed without reason, and 2) when Plaintiff was shot twice and denied any assistance.

In the first instance, the complaint states that Viruet-Mojica and De Jesus sprayed Plaintiff with pepper spray without reason when Plaintiff was peacefully walking home. (Docket No. 1 p. 6). At this time, 1) there was no crime at issue, and Plaintiff 2) did not pose a safety threat 3) nor was he evading arrest. (Docket No. 1). Therefore, based on these allegations, it is reasonable to infer that Viruet-Mojica and De Jesus used unreasonable force. With regards to the shooting, the complaint states that Viruet-Mojica shot Plaintiff twice after Vazquez told him to shoot, and as Defendant De Jesus stood and watched. (Id.) At this point, 1) Plaintiff was not suspected of a serious crime[2], 2) he did not pose a threat to the safety of the officers or bystanders, and 3) he was not resisting arrest. (Id.). It is thus reasonable to infer that Viruet-Mojica, Vazquez and De Jesus's actions pertaining to Plaintiff's shooting constituted excessive force.[3] Plaintiff's § 1983 claims remain.

II.  Carmen Ocasio, Carlos Viruet and CVG's Claims under 42 U.S.C. § 1983

Viruet-Mojica, De Jesus and Vazquez argue that Plaintiffs Carmen Ocasio, Carlos Viruet and CVG have no standing to sue

---

[2] While police were told that Plaintiff had killed Morales-Sanchez (by Morales-Sanchez's daughter), the police found Morales-Sanchez unharmed, and, thus, had no reason to suspect Plaintiff had committed any violent crime. (Docket No. 1, p. 8).

[3] De Jesus is liable for excessive force because, even though he was simply present during the shooting, he had a "realistic opportunity" to stop the use of excessive force. See Martinez v. Colon, 54 F.3d 980, 985 (1st Cir. 1995). The Court's reasoning is fully developed in the analysis of Saez and Salgado's motion to dismiss.

under 42 U.S.C. § 1983. (Docket No. 23). This is correct. "One person may not sue . . . for the deprivation of another person's civil rights." Quiles ex rel. Project Head Start, Municipality of Utuado v. Hernandez Colon, 682 F.Supp. 127, 129 (D.P.R. 1988) (citing Dohaish v. Tooley, 670 F.2d 934 (10th Cir. 1982)). Since Carmen Ocasio, Carlos Viruet and CVG's civil rights were not violated, their § 1983 claims are dismissed.

III.  Plaintiffs' Supplemental Jurisdiction Claims

Viruet-Mojica, De Jesus and Vazquez argue that Plaintiffs' Puerto Rico law claims should be dismissed because Plaintiffs have failed to state a federal cause of action. (Docket No. 23). However, since the Court will not dismiss Plaintiff's § 1983 claim, the premise of their argument falls.

With regard to plaintiffs Carmen Ocasio, Carlos Viruet and CVG's state law claims, 28 U.S.C. §1367 expressly provides that "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties," as long as they form part of the same "case or controversy."  Since Carmen Ocasio, Carlos Viruet and CVG's Puerto Rico claims arise out of the same controversy as Plaintiff's § 1983 claim, the Court can exercise supplemental jurisdiction over them. Plaintiffs' Puerto Rico law claims remain.

IV.  Claim Under Article 1803 of the Puerto Rico Civil Code

Defendants move to dismiss the claims under Article 1803 of the Puerto Rico Civil Code. Plaintiffs, on the other hand, do not refute this in their opposition to the motion to dismiss. Since issues are deemed waived if they are not sufficiently argued, United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), the Court adopts Defendants' argument and dismisses Plaintiffs' Article 1803 claims against Viruet-Mojica, De Jesus and Vazquez.

Motion to dismiss as to Defendants Saez and Salgado

An officer who is present and does not protect a victim from another officer's excessive force can be held liable under 42 U.S.C. § 1983 if he had a "realistic opportunity" to prevent the excessive force. See Martinez v. Colon, 54 F.3d 980, 985 (1st Cir. 1995). Saez and Salgado argue that this "failure to intervene" claim should be analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the objectively reasonable standard of the Fourth Amendment. However, the First Circuit has held the exact opposite. See Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 51 (1st Cir. 2005) (holding that a claim against an officer for failing to intervene against the use of excessive force is a straightforward Fourth Amendment excessive force claim). Therefore, the Court will proceed

analyzing the § 1983 claims against these defendants under the Fourth Amendment.

The key question concerning the claims against Saez and Salgado is whether they had a "realistic opportunity" to prevent the excessive force. See Martinez, 54 F.3d 980, 985 (1st Cir. 1995). Plaintiffs allege that while the shooting officer had his gun out, one officer told him to shoot and another yelled "Don't do it." (Docket No. 1, p. 8-9). It is reasonable to infer that there was a long enough time lapse for Saez and Salgado, present at the scene, to make an effort to prevent the shooting. Furthermore, Plaintiffs allege that there were 4 or 5 seconds between the first and second shot, (Docket No. 1, p. 9); again, giving Saez and Salgado time to intervene and prevent the second shot. Plaintiffs further allege that none of the officers tried to help Plaintiff after he was shot, and that Salgado even prevented Plaintiff's brother from helping him. (Docket No. 1, p. 9-10). Taking these factual allegations as true, we find it reasonable to infer that Saez and Salgado had a "realistic opportunity" to stop the excessive force. Plaintiff's § 1983 claims against Saez and Salgado remain. Pursuant to the same analysis set forth as to Viruet-Mojica, De Jesus and Vazquez's motion to dismiss, any § 1983 claims asserted by Carmen Ocasio, Carlos Viruet and CVG are dismissed; and Plaintiffs' supplemental state law claims remain.

Motion to dismiss as to Defendant Ramos

I.   Plaintiff's Claims under 42 U.S.C. § 1983

As previously discussed, the constitutional standard that governs an excessive force claim is the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). Therefore, this claim will be analyzed under the Fourth Amendment.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*, but may be liable on the basis of their own acts and omissions. Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009); Aponte Matos v. Toledo Dávila, 135 F.3d 182, 192 (1st Cir. 1998). Supervisory liability can arise under § 1983 "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). In addition, the plaintiff must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation." Id. This affirmative link can be shown through "a known history

of widespread abuse sufficient to alert a supervisor to ongoing violations." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

Plaintiffs allege that Ramos had received prior complaints about the officers involved in the incident that gave birth to this complaint. (Docket No. 1, p. 20). Plaintiffs also state that the Toa Alta Police Department had received past complaints concerning the use of excessive force, which were not properly addressed. (Docket No. 1, p. 20-21). Given these allegations it is reasonable to infer that Ramos knew or should have known the officers he supervised had a propensity for using excessive force; coupled with an alleged known history of widespread abuse in the Toa Alta Police department, the Court finds that the complaint establishes an affirmative link between Ramos's improper supervision and the officers' constitutional violations. At the very least, the doors to discovery should be opened, for it may shed light on the role Ramos played. Plaintiff's 42 U.S.C. § 1983 claim against Ramos remains.

II. Carmen Ocasio, Carlos Viruet and CVG's Claims under 42 U.S.C. § 1983

The Court dismisses these claims pursuant to the same analysis set forth as to Viruet-Mojica, De Jesus and Vazquez's motion to dismiss.

III.  Plaintiffs' Supplemental Jurisdiction Claims

The supplemental Puerto Rico law claims against Ramos remain pursuant to the same analysis set forth as to Viruet-Mojica, De Jesus and Vazquez's motion to dismiss.

IV.  Claim Under Article 1803 of the Puerto Rico Civil Code

Plaintiffs' claims under Article 1803 of the Puerto Rico Civil Code are dismissed pursuant to the same analysis set forth as to Viruet-Mojica, De Jesus and Vazquez's motion to dismiss.

**CONCLUSION**

For the reasons stated above, the Court **GRANTS IN PART and DENIES IN PART** the motions to dismiss put forth by Viruet-Mojica, De Jesus and Vazquez; Saez and Salgado; and Ramos. Carmen Ocasio, Carlos Viruet and CVG's § 1983 claims are dismissed; Plaintiffs' claims under Article 1803 are also dismissed. All other claims remain.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of July, 2013.


                                                S/Jay A. Garcia-Gregory
                                                JAY A. GARCIA-GREGORY
                                       United States District Judge